### SACRAMENTO VALLEY ELECTRIC R. CO. v. ASTON.

(Circuit Court of Appeals, Ninth Circuit. October 2, 1916. On Motion for Rehearing, November 13, 1916.)

No. 2670.

RAILROADS ⬤110—CONTROL AND REGULATION—VALIDITY OF CONTRACT—CONSTRUCTION OF ORDER OF STATE COMMISSION.

Public Utilities Act Cal. Dec. 23, 1911 (St. 1911 [Ex. Sess.] p. 18), creates a railroad commission which is given the power to regulate and control public utilities, including the issue of stocks, etc., and the use of the proceeds thereof which in each case must be authorized by an order of the commission. Defendant, an electric railroad company, was authorized by an order of the commission to issue and sell preferred and common stock, the order providing that there should be $750,000 paid in for stock "before any construction work begins or any expense other than that incident to the sale of stock is incurred." *Held,* that a contract by defendant with a civil engineer to gather data and make a report showing the estimated cost of construction of the road, traffic conditions, etc., to be used in promoting the sale of stock and enlisting capital for the enterprise, was not prohibited by such order, but was valid, especially in view of the construction placed on the order by the commission itself by approving similar expenditures made for preliminary work, including the acquisition of right of way.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 339–341; Dec. Dig. ⬤110.]

---

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Second Division of the Northern District of California; Wm. C. Van Fleet, Judge.

Action at law by Taggart Aston against the Sacramento Valley Electric Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Aston (an alien), defendant in error here, but to be called plaintiff, sued the Sacramento Valley Electric Railroad Company (a California corporation), plaintiff in error (to be called defendant), for the breach of a contract alleged to have been entered into about September 22, 1913. By its terms Aston was employed as a consulting civil engineer, to gather data and prepare report showing estimates of the cost of construction of the defendant's proposed railroad project in California, including possible traffic, probable financial returns, traffic conditions to be developed by the construction of the proposed railroad, etc. It is alleged that when the contract was entered into it was agreed that plaintiff would cause the report to be presented to financial interests abroad by one Wilsey; that the terms of the contract required defendant to pay plaintiff for his services in furnishing the report $3,500 as follows: $750 on September 27, 1913; $750 on or before October 13, 1913; $500 on November 3, 1913; $500 on November 17, 1913, provided the report was completed by that time, and, if not, upon the completion thereof; and the balance of the whole sum of $3,500, amounting to $1,000, to be paid when the defendant should hear from Wilsey in London that the matter of the presentation of the report was receiving favorable consideration. Plaintiff alleges that he proceeded to perform, and that about October 1, 1913, the defendant repudiated the contract and refused to proceed further, but that, before repudiation, defendant accepted the performance of the contract by plaintiff and paid him on account $150; that plaintiff offered to perform, and tendered also the services of Wilsey in the matter of the presentation of the report to financial people abroad, but that the tenders were refused. In a second cause of action plaintiff pleaded quantum meruit. The answer denied all the material allegations of the complaint, and set up that under the laws of California defendant could not lawfully enter into any contract with the plaintiff, such as plaintiff alleged in his complaint, and could not employ plaintiff to render any services or to pay him the sums alleged.

The District Court found that the contract as pleaded had been entered into, but that defendant never heard from Wilsey from London that the presentation of the report was receiving favorable consideration; that plaintiff was performing his contract when defendant repudiated it; that plaintiff offered to perform, but that defendant refused to perform its part under the contract; and that there was no inhibition of law forbidding the defendant from making the contract found to have been made between it and the plaintiff. Judgment went for plaintiff for $2,614.58.

The Public Utilities Act of California, adopted December 23, 1911, created a railroad commission and invested it with certain powers. Section 52 of that act contains a provision giving to the railroad commission right of supervision, regulation, restriction, and control over public utilities, in issuing stocks, stock certificates, bonds, notes, evidences of indebtedness, and creating liens on their property. The section requires that, before a public utility may issue stocks, stock certificates, bonds, and notes, it must have an order detailing the amount and purposes of the proposed issue, and reciting that in the opinion of the commission the money, property, or labor to be procured or paid for by the issue of securities is reasonably required for the purposes specified in the order. The commission is authorized to grant permission to issue stock, stock certificates, bonds, notes, or other evidences of debt, and may attach to the exercise of its permission such condition or conditions as it may deem reasonably necessary. No public utility without the consent of the commission is permitted to apply the issue of any stock or stock certificate, or bond, or note, or other evidence of debt, or any proceeds thereof, to any purpose not specified in an order of the commission, or to any purpose specified

in excess of the amount authorized for such purpose. The statute also provides that all stock and every stock certificate, and every bond, note, or other evidence of indebtedness, of a public utility, issued without an order of the commission authorizing the same then in effect, shall be void. It is also provided that every public utility which directly or indirectly issues or causes to be issued any stock, or stock certificate, or bond, note, or other evidence of indebtedness, not in conformity with an order of the commission, or which applies the proceeds from the sale, or any part thereof, of stocks or bonds, or other evidences of indebtedness, to any purpose other than the purposes specified in the order of the commission, is subject to a penalty; and every officer, agent, or employé, and every other person, who knowingly applies the proceeds from the sale of any stock, or bond, or note, or other evidence of indebtedness to any purpose not specified in the commission's order, or to any purpose specified in the commission's order in excess of the amount authorized, is made guilty of a felony. Another section of the act (79) applies to individuals, and makes criminal the act of any person who aids or abets any public utility in its noncompliance with, or failure to comply with, the statute. Section 81 of the act makes it a contempt for a public utility or any person to disobey an order of the commission.

On August 13, 1912, the railroad commission of the state by an order authorized the defendant to issue 30,000 shares, par value of $3,000,000, preferred stock, and 7,500 shares, par value $750,000, of common stock, the preferred stock to be sold at par, with an allowance of 25 per cent. for commissions. Among other things the order recited: "In order that reasonable assurance be had that the actual construction of this road will not be entered upon before there is sufficient money in hand to warrant proceeding with the scheme, there should be $750,000 paid in on stock before any construction work begins, or any expense other than that incident to the sale of stock is incurred by the company, and title to rights of way should be taken conditioned on the receipt by the company of the above amount of money. In order that the commission may assure itself at all times that the money received from the sale of this stock is being properly and judiciously expended for the purposes named, we recommend that, in addition to a compliance with order No. 24, applicant be ordered to submit to the commission for its approval, before the execution thereof, all general contracts exceeding the amount $1,000."

In the formal order the commission provided that construction should not be entered upon, "nor liability created, nor money paid out, except for commissions as aforesaid, until there shall be in the hands of the company from the sale of stock $750,000." The order then laid down the uses to which the proceeds from the sale of preferred stock shall be put, and specified purchase of material and rolling stock and construction of electric railroad as set out in the application and exhibits attached to the application. It was also ordered that the company should keep separate and true accounts showing the application in detail of the proceeds of the sale or exchange of stock authorized by the order to be issued, and full accounts of the sale or disposal of stocks during each month, of moneys or property realized from the sales, and the use and application of the money or property. It was also ordered: "And in addition thereto said company shall submit to this commission for its approval the form of all contracts for the sale or exchange of stock, and before the execution thereof all contracts for grading, bridging, track, including materials and labor, equipments of all kinds, and all materials, labor, and property involving costs in excess of $1,000."

In its activities the company, under the order of August 13, 1912, and up to August 31, 1913, received $416,401.55 on account of the sale of its preferred stock, $212,290 of which was cash and $204,111.55 represented in promissory notes, and it appeared that it had paid out in commissions on the sale of such capital stock, $80,290.29, and for expenses in conducting the business of the corporation, $40,468.40. It thereafter appeared, from the opinion of Commissioner Edgerton of the railroad commission of the state of California, dated September 27, 1913, that at the hearing before the commission, through the activities of the officers and agents of the company, 90 per cent. of the neces-

sary right of way for the construction of the railroad had been given to the company. The commission then ratified the payment of $40,468.42 on account of general expenses, and directed that the company should submit for the approval of the commission a detailed statement showing general expenses incurred from August 31, 1912, the date of the first order of the commission, to September 27, 1913, the date of the second order of the commission. The same order of the commission of September 27, 1913, gives authority to the company to expend for general purposes similar to those detailed in the statements theretofore made an amount not to exceed $1,000 per month, provided said $1,000 should not be taken from cash in the hands of the corporation, but should be realized from the sales of promissory notes thereafter taken for stock sales. Provision was then made that the company should each month make report to the commission concerning the sale or disposal of stocks during the preceding month, the conditions of the sale or disposition, the moneys or properties realized therefrom, "and the use and application of such money or property. And in addition thereto said company shall submit to this commission for its approval the form of all contracts for the sale or exchange of stock, and before the execution thereof all contracts for grading, bridging, track, including materials and labor, equipment of all kinds, and all materials, labor, and property involving costs in excess of $1,000."

Thereafter, on December 30, 1913, a second supplemental order was made by the commission to meet the application of the company to allow payments on account of current expenses in the sum of $1,250 per month, instead of $1,000 per month, for the approval of certain expenses incurred by and on behalf of the company both before and after incorporation, payment to be made in par of preferred stock. Upon this matter the commission had this opinion: "In the supplemental order of September 27, 1913, applicant was ordered to file a detailed statement of unpaid obligations not included in the statement of expenses covering the period up to August 31, 1913. Such detailed statement has now been made, showing a total of $1,647.49, and request is made that the amounts therein contained be allowed to be paid. An examination of these items shows that they are proper items of expense, and therefore should be allowed. Prior to and for a time after the incorporation of applicant, certain men were active in the promotion of the railroad project for which applicant was incorporated. During such activity they expended, on behalf of the project, various sums, totaling $3,159.55, which they now ask this commission to allow applicant to pay in par of preferred stock. It is evident that these men did expend from their own resources the amounts named, and the evidence shows that the board of directors of applicant has allowed these various sums as constituting obligations in favor of these men. Therefore I think this request should be granted and applicant be authorized to issue preferred stock at par in settlement."

Black & Clark, of San Francisco, Cal., and A. C. Huston, of Woodland, Cal., for plaintiff in error.

Jacob M. Blake, of San Francisco, Cal., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). The question for decision is whether or not the contract sued upon in the first cause of action is made invalid and unenforceable by the Public Utilities Act of the state. It goes without saying that such a contract is in itself not against public policy. A railroad company might well be expected to employ an engineer to gather information and data and to embody the result of his investigations in a report to be used in enlisting capital for the carrying out of the enterprise. When the contract was made, the parties to it evidently believed that it was not against the statute of the state. Mr. Huston, counsel for the corporation, testi-

fied before the District Court that it was his opinion that the power to make such a contract was implied in the order of the commission of August 13, 1912.

It was not unreasonable to construe the order of August 13th prohibiting the creation of liability and payment of money "except for the commissions as aforesaid" until the sale of stock reached $750,000 as referring solely to prohibiting construction contracts. The purpose of employing Aston was evidently to gather data sufficient to enable the newly incorporated company to take its initial steps toward obtaining preliminary financial aid in the large principal cities abroad and in the United States. The contract in its essence pertained to formative matters rather than to contractual relationships which could not ripen into binding agreements without first having the approval of the commission. Actual construction of the road and liability for money paid out for commissions for sale of stock had to do with things which would arise after the preliminary arrangements could have been successfully made.

The concluding provision of the order of August 13th requiring the company to submit to the commission for its approval the form of all contracts for the sale or exchange of stock and before the execution thereof all contracts for grading, bridging, track, including materials and labor and property, involving costs in excess of $1,000, does not interfere with the power of the company to contract generally and for labor and property, grading, and such matters, where the cost did not involve a sum more than $1,000. Furthermore, the provisions in the same order requiring accurate accounts to be kept and a report to be made to the commission, showing the terms and conditions of sales of stock authorized to be issued, and the use or application of such money or property, lends support to the argument that it was not intended to prevent the company from paying money on accounts of the nature of the one here involved, or other than on account of commissions for the sale of its stock. Confirmation of this view is found in the recital in the supplemental opinion and order of the commission made on September 27, 1913, where the activities of the officers and agents of the company were recognized by the commission as having been the means whereby 90 per cent. of the needed right of way for the railroad line had been obtained, for it is but reasonable to believe that such activities could only have been carried on by persons employed by the railroad company as right of way agents.

Some further aid in construing the orders of the commission is found in the supplemental order of September 27, 1913, wherein the commission expressly ratified the action of the corporation incurring obligations in excess of $40,000, this sum being made up of items of expenses apart from corporate obligations on account of commissions for sales of stock. It appears that informal consultations were had with Commissioner Edgerton and his views were sought, and while he could not authorize any act to be done which required the authority of the commission, still, as one in authority, his interpretation of the

duties and intentions of the commission was entitled to respectful consideration by the officials of the company, and when afterwards the ratification of payments of large sums for expenses and obligations incurred between August 13, 1912, and September 27, 1913, was had by order of the commission, it served to show what construction was placed upon the language used in the order of the commission. Again, a second supplementary order of the commission, dated December 30, 1913, authorizing payment by the company of detailed expenses aggregating nearly $5,000, is evidence of the meaning to be put upon the original order of the commission.

There having been no apparent purpose in the commission to prevent the railroad company from making such a contract for services preliminary to construction as is here sued upon, the plaintiff properly prevailed, unless the law itself forbade the contract. The statute, however, makes no declaration that a contract between a public utility and an engineer for work appropriately connected with preliminary matters is void without an order of the commission authorizing the same. With unmistakable certainty stock, stock certificates, bonds, notes, or other evidences of debts issued without an order of the commission shall be void; but notwithstanding the far-reaching power of the commission, as upheld in Pacific Telephone, etc., Co. v. Eshleman, 166 Cal. 640, 137 Pac. 1119, 50 L. R. A. (N. S.) 652, Ann. Cas. 1915C, 822, after careful examination of the several provisions of the act, they fail to satisfy us that it was the intent of the law that the courts should refuse to enforce a contract which has not direct relation to stocks, bonds, and other evidences of debt, and which we cannot find is included in the meaning of the prohibitory terms of the statute. Fackler v. Ford et al., 24 How. 322, 16 L. Ed. 690.

It being our conclusion that the contract with plaintiff for services was not beyond the power of the corporation, the District Court was right in its judgment.

Affirmed.

## On Motion for Rehearing.

The motion for rehearing raises and argues the question whether application of the issue of any stock or bonds issued by the railroad company, or the proceeds of any stock issued or bond sales made, may lawfully be used to pay the judgment affirmed by this court. As the question of a way of paying the judgment was not directly involved in the case, the point was not considered for decision, and we express no opinion on it now.

Counsel say that we have put a mistaken construction upon a portion of Mr. Huston's evidence before the District Court. But if we accept it that Mr. Huston did not mean that it had been his opinion that the corporation had the implied power to make such a contract as was involved, it does not affect the material question presented for decision.

The motion is denied.